IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ESTEVERNICO A. MITCHELL, #207110, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:16-cv-575-ECM-WC |
| ) | |
| BOBBY CROCKER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.     INTRODUCTION**[1]

Plaintiff Estevernico A. Mitchell ("Mitchell") brings this action pursuant to 42 U.S.C. § 1983, claiming that during his imprisonment in the Elmore Correctional Facility, medical providers acted with deliberate indifference to his serious medical needs. Mitchell filed an amended complaint that supersedes the claims in his original complaint, as ordered by the court.[2] Mitchell names Corizon Health, Inc. ("Corizon"), the contract medical provider for the state prison system at the time the challenged action occurred; Dr. Bobby Crocker ("Dr. Crocker"), the former Regional Medical Director for Corizon Health; and Michelle Sagers-Copeland ("Copeland"), a licensed registered nurse and the Health Services Administrator ("HSA") for Staton Correctional Facility.

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.
[2] Mitchell filed an initial complaint on July 8, 2016, and the superseding amended complaint on October 10, 2016.

In his amended complaint, Mitchell alleges that the medical defendants acted with deliberate indifference to his health by delaying and/or failing to provide medical treatment for his heart condition. The defendants filed a special report and supporting evidentiary materials addressing the claims presented in the complaint. In these filings, the defendants deny they acted with deliberate indifference to Mitchell's medical condition and, instead, maintain that Mitchell received appropriate treatment from prison medical personnel. Doc. 37 at 37–42. The defendants further assert that the complaint is due to be dismissed because Mitchell failed to exhaust the administrative remedies available to him through Corizon prior to filing this case. Doc. 39 at 7 & Doc. 40 at 34-37. On April 19, 2017, Mitchell filed his response in opposition to the defendants' special report. Doc. 58.

Based on the foregoing, the court deems it appropriate to treat the report filed by the defendants as a motion to dismiss with respect to the exhaustion defense. Thus, this case is now pending on the defendants' motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.").

## II.   STANDARD OF REVIEW

In addressing the requirements of 42 U.S.C. § 1997e with respect to exhaustion, the Eleventh Circuit has recognized that:

2

> "[t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting *Freeman v. Francis*, 196 F.3d 641, 643–44 (6th Cir. 1999)). This means that "until such administrative remedies as are available are exhausted," a prisoner is precluded from filing suit in federal court. *See id*. (affirming dismissal of prisoner's civil rights suit for failure to satisfy the mandatory exhaustion requirements of the PLRA); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) ("reaffirm[ing] that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies" before ***filing*** suit in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding that under the PLRA's amendments to § 1997e(a), "[a]n inmate incarcerated in a state prison . . . must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit for failure to satisfy the mandatory exhaustion requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for failure to exhaust administrative remedies prior to filing suit in federal court).

*Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (emphasis added).

Furthermore, the law is well-settled that:

> the question of exhaustion under the PLRA is a "threshold matter" that [federal courts must] address before considering the merits of the case. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Because exhaustion is mandated by the statute, [a federal court has] no discretion to waive this requirement. *Alexander v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998).

*Myles v. Miami-Dade Cty. Corr. and Rehab. Dep't*, 476 F. App'x 364, 366 (11th Cir. 2012). The court will therefore "resolve this issue first." *Id*.

"When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendant['s] versions of the facts, and if they

3

conflict, take the plaintiff's version of the facts as true. 'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.' *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant,* 530 F.3d at 1373–74). If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.' *Id*. (citing *Bryant*, 530 F.3d at 1373–74, 1376)." *Myles*, 476 F. App'x at 366. Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. *See* [*Turner*, 541 F.3d at 1082]. The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record. *Bryant*, 530 F.3d at 1376." *Trias*, 587 F. App'x at 535. Based on the foregoing, the Eleventh Circuit specifically rejected the argument that "disputed facts as to exhaustion should be decided by a jury." *Id*.

Upon review of the complaint, the defendants' special report and the undisputed evidentiary materials filed in support thereof, the court finds that the defendants' motion to dismiss is due to be granted.

## III.   DISCUSSION

Mitchell challenges the constitutionality of medical treatment he received for a heart condition during his incarceration at the Elmore Correctional Facility. Specifically, he asserts that the medical defendants acted with deliberate indifference to his serious

medical condition by delaying his treatment for his cardiovascular condition, including a surgical procedure.[3] The defendants argue that this case is subject to dismissal because Mitchell failed to properly exhaust the administrative remedies provided by Corizon prior to filing this complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The PLRA compels proper exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The PLRA strengthened [the exhaustion] provision [applicable to inmate complaints] in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards. Indeed, as

---

[3] In his amended complaint, Mitchell alleges that the violation occurred "from May 2015 up until the present 10-10-2016." Doc. 11 at 2.

[the Supreme Court] held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought–monetary damages–cannot be granted by the administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (internal citation omitted).

Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander*, 159 F.3d at 1325. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). However, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. Generally, a remedy is "available" when it has "'sufficient power or force to achieve an end,' [or is] 'capable of use for the accomplishment of a purpose[.]'" *Booth*, 532 U.S. at 737. Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." 548 U.S. at 90–91, 93. The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an

6

untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. 548 U.S. at 83–84; *Bryant*, 530 F3d at 1378 (To exhaust administrative remedies in accordance with the PLRA, prisoners must "properly take each step within the administrative process."); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom*, 223 F.3d at 1261 (holding that inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

It is undisputed that Corizon provides an administrative remedy for inmate complaints regarding medical treatment in the form of an inmate grievance procedure. Doc. 40 at 7–8. In addition, the undisputed evidentiary materials filed by the defendants demonstrate that Mitchell had access to the grievance procedure at all relevant times — *i.e.*, the procedure was available to him throughout his incarceration at the Elmore Correctional Facility — but he did not "***submit*[] *any Medical Grievance Appeals regarding any issues whatsoever***." Doc. 40 at 9 (emphasis in original); Doc. 25-1 at 7.

Darryl Ellis, the Director of Nursing for Staton Correctional Facility during the time relevant to the complaint, explains the applicable grievance procedure as follows:

Upon arriving at any facility operated by the Alabama Department of Corrections ("ADOC"), inmates are notified of the procedures and processes for obtaining medical care and prescribed medications. The health care units within ADOC facilities generally rely upon the same procedures for obtaining emergency and non-emergency (i.e. sick call) medical treatment, conducting chronic care clinics, medication administration, segregation sick call and the like and permitting an inmate's invocation of and participation in a grievance process. As part of this medical staff's orientation of inmates, inmates are provided a form entitled "ACCESS TO HEALTHCARE SERVICES" which also provides a detailed explanation of the grievance process.

When an inmate has a non-emergency medical or health problem and/or complaint at Staton, an inmate may file a sick call request form in order to bring this problem or complaint to the attention of the medical staff and/or request medical treatment for this problem. The sick call request process is well-known at Staton and is utilized by inmates on a daily basis. In the "ACCESS TO HEALTHCARE SERVICES" form, inmates are provided a description of the sick call process. For inmates housed in general population areas, sick call request forms are available at the Health Care Unit and at various locations throughout the facility….

The grievance process is initiated when an inmate submits a Medical Grievance form to the HSA through the institutional mail system. After reviewing the Medical Grievance, the HSA provides a written response within approximately ten (10) days of receipt of the Inmate Grievance. The written response to a Medical Grievance is included on the bottom portion of the same form containing an inmate's Medical Grievance. Below the portion of the form designated for the "Response," the following notation appears:

> IF YOU WISH TO APPEAL THIS REVIEW YOU MAY REQUEST A GRIEVANCE APPEAL FORM FROM THE HEALTH SERVICES ADMINISTRATOR. RETURN THE COMPLETED FORM TO THE ATTENTION OF THE HEALTH SERVICE ADMINISTRATOR. YOU MAY PLACE THE FORM IN THE SICK CALL REQUEST BOX OR GIVE IT TO THE SEGREGATION SICK CALL NURSE ON ROUNDS.

> As stated in the Medical Grievance forms, the second step of the grievance process involves the submission of a formal Medical Grievance Appeal, at which time the inmate may be brought in for one-on-one communication with the medical staff, HSA or me. A written response to a formal Medical Grievance Appeal is provided within approximately ten (10) days of receipt. Medical Grievance and Grievance Appeal forms are available from the Health Care Unit and the correctional shift commander office at Staton. Inmates are instructed to place completed Medical Grievance and Medical Grievance Appeal forms in the sick call boxes located by the pill call room. The HSA reviews the grievances daily, provides a written response within approximately ten (10) days at the bottom of the form and returns a copy of the completed forms to the inmate. The HSA encourages inmates who have complaints about the medical care they have sought or received at Staton to utilize this grievance process.

Doc. 25-1 at 2–7 (paragraph numbering omitted).[4]

The record before the court demonstrates that an administrative remedy was available to Mitchell during his confinement at Elmore Correctional Facility via Corizon's grievance procedure. The record includes four medical grievances submitted by Mitchell. On January 21, 2014, Mitchell submitted a medical grievance requesting skin cream which is unrelated to the issues in this case. Doc. 40-10 at 116. On July 2, 2016, and October 27, 2016, Mitchell submitted additional medical grievances regarding his medical treatment (Doc. 40-10, at 117-118); these grievances, however, were submitted after the initiation of this lawsuit. *See Harris*, 190 F.3d at 1286; *Miller*, 196 F.3d at 1193; *Alexander*, 159 F.3d at 1328; *Smith*, 491 F. App'x at 83. Moreover, upon receiving written responses from medical personnel concerning the July and October

---

[4] *See also* Copeland's Affid., Doc. 40-3.

9

2016 grievances, Mitchell did not fully avail himself of Corizon's grievance procedure by submitting a medical grievance appeal.

Shortly before filing this lawsuit, Mitchell did submit one grievance to medical personnel regarding an alleged delay of medical treatment for his heart condition. Specifically, on June 2, 2015, Mitchell submitted a medical grievance complaining that he was "long overdue" for an appointment with the cardiologist "to remove the rest of the blockage." Doc. 40-10, at 119. In response, a Corizon official indicated that "[patient] has seen Dr. Ahmed now and [follow up] to be set." *Id*. Although Mitchell filed the grievance regarding his cardiovascular disease before filing the complaint, he failed to exhaust his available remedies in full by submitting a medical grievance appeal.

The Court granted Plaintiff an opportunity to respond to the exhaustion defense raised by the medical defendants. Plaintiff's response in no way refutes the medical defendants' assertion he failed to exhaust an available administrative remedy provided by Corizon. *See* Doc. 58. The Court, therefore, finds a grievance system is available at Staton for Plaintiff's claims, but Mitchell failed to exhaust the administrative remedy available to him. Mitchell does not dispute his failure to submit any grievance appeals related to the provision of his medical care at Staton regarding the matters alleged in the complaint.

Mitchell therefore failed to properly exhaust an administrative remedy available to him during his incarceration at Elmore Correctional Facility before seeking federal relief — a precondition to proceeding in this court on his claims. Consequently, the

defendants' motion to dismiss is due to be granted to the extent the defendants seek dismissal of this case based on Mitchell's failure to properly exhaust an available administrative remedy prior to initiating this action and this case is subject to dismissal without prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for such failure.

## IV. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' Motion to Dismiss (Doc. 40) be GRANTED to the extent Defendants seek dismissal of this case due to Plaintiff's failure to properly exhaust an administrative remedy prior to filing this case;

2. This case be DISMISSED without prejudice;

3. Judgment be ENTERED in favor of Defendants.

It is further

ORDERED that **on or before June 7, 2019**, Plaintiff may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. Plaintiff is advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar a party from a *de novo* determination by

the District Court of issues covered in the Recommendation and shall bar a party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 17th day of May, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE